IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 28, 2001 Session

## JAMES C. R. LANEY v. EVELYN B. OLDHAM

**Appeal from the Chancery Court for Hamilton County**
**No. 71888     W. Frank Brown, III, Chancellor**

**FILED OCTOBER 19, 2001**

**No. E2000-02710-COA-R3-CV**

Evelyn B. Oldham ("Defendant") sold to James C. R. Laney ("Plaintiff") a house and lot located next to a Chalet owned by Defendant.  Defendant granted Plaintiff an easement for use of a driveway. Plaintiff later converted his residence into a business.  In 1993, the Trial Court entered an Order interpreting the easement to allow Plaintiff's use of the driveway for a "normal amount of delivery." No appeal was taken from this Order.  In 2000, the Trial Court, but a different trial judge, entered another Order interpreting the 1993 Order to allow for a normal amount of business deliveries using the driveway.  We conclude that the 1993 Order permits only a normal amount of deliveries consistent with a residential use.  We reverse the decision of the Trial Court, and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the**
**Chancery Court Reversed; Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J., and CHARLES D. SUSANO, JR., J., joined

Pamela R. O'Dwyer and Randall D. Larramore, Chattanooga, Tennessee, for the Appellant Evelyn B. Oldham.

Phillip E. Fleenor and Jane M. Stahl, Chattanooga, Tennessee, for the Appellee James C. R. Laney.

# OPINION

## Background

Plaintiff sued Defendant some years after Plaintiff purchased from Defendant a house and lot located next door to a Chalet owned by Defendant. At the time of the purchase, the parties entered into a contract titled Adjoining Property Owners' Agreement Regarding Water Lines, Septic Tanks, and Driveway ("Agreement"), which was signed on May 2, 1974. The Agreement conveyed to Plaintiff a "perpetual easement in the driveway located on Lot 2", Defendant's property, and further provided that the parties would split equally the cost of any repairs.

When this lawsuit began in 1992, Plaintiff was seeking to install a separate septic tank system and have Defendant pay a portion of the cost pursuant to the terms of the Agreement. Defendant filed an answer and a counter-claim. Defendant asserted in the counter-claim that when the Agreement was entered into, the property purchased by Plaintiff was zoned for residential use. Thereafter, Plaintiff had the property re-zoned for commercial use. Defendant claimed that after having the property re-zoned, Plaintiff began using the driveway as a parking lot and a business entry. Defendant claimed this was a higher use than was granted in the easement created by the Agreement. In June of 1993, the Trial Court entered an Order after a two day trial. The portion of the 1993 Order pertinent to this appeal is as follows:

> [T]he original driveway easement granted to the Plaintiff/Counter-defendant by the Adjoining Property Owner's Agreement was to be for the use of the driveway as a residence. Now, the Plaintiff has changed the uses of the premises to a business, and certainly Mr. Laney or his wife going to their business would not be any increase upon the burden to Lot No. 2 for that use. Likewise, a normal amount of delivery by the driveway would not be an additional burden upon Lot No. 2. The clients or customers of the Plaintiff/Counter-defendant would be a burden upon the easement and one not contemplated at the time of the Adjoining Property Owner's Agreement. However, the Plaintiff/Counter-defendant will be allowed to park on his own property and the Court interprets the easement across the driveway upon Lot No. 2 to be one of allowing the Plaintiff/Counter-defendant to cross the property on Lot No. 2, but not to park on Lot No. 2. The Defendant/Counter-plaintiff and her tenants shall provide ample unobstructed driveway ingress and egress to the owners or tenants of Lot No. 1.[1]

---

[1] The original Order contained a sentence that was stricken from the Order after Defendant filed a motion to alter or amend the judgment. That sentence read: "The turning around of a vehicle by the use of the driveway is permissible, so long as that can be reasonably done in the space of the current driveway and without requiring the Defendant/Counter-plaintiff or her tenants to move their cars."

After this Order was entered, Defendant timely filed an appeal which she voluntarily dismissed approximately three months later.

In November of 1997, Plaintiff filed a petition for contempt and to enforce the previous Order of the court. Plaintiff claimed that Defendant was "interfering with deliveries to Plaintiff's property by U.P.S. and with garbage and recycling pickup." Defendant filed a response and counter-petition, claiming that when this matter was originally heard in 1993, Plaintiff had not yet requested annexation of the property by the City of Chattanooga. Defendant claimed that subsequent to the previous Order, and as a result of annexation of the property by the City, there were additional burdens on the subservient tenement which did not exist when the case was heard in 1993. Defendant sought to have the additional burdens stopped.

A hearing was held on the various claims raised in the petition and counter-petition. In September of 2000, the Trial Court issued an Order which stated, in relevant part, as follows:

> The partied have returned to this Court … for further interpretation of the Adjoining Property Owner's Agreement and clarification of questions surrounding the driveway easement, particularly whether the use of the shared driveway by delivery trucks and garbage trucks constitutes a material increase in the burden upon the subservient estate.…[I]t is clear that at the time the parties previously came before this Court in 1993, the Plaintiff, Mr. Laney, had already changed the use of the property at 806 South Scenic Highway to that of a business. Therefore, the Court previously took into account this business usage when stating that a "normal amount of delivery by the driveway would not be an additional burden." Since 1993, Mr. Laney petitioned the City of Chattanooga to place 806 South Scenic Highway into the corporate city limits of Chattanooga to obtain the services offered by the City, including but not limited to garbage pick-up. Two types of "deliveries" are in question here – the delivery and pickup of packages by services such as UPS, Federal Express, and perhaps others, and the collection of garbage by the City of Chattanooga. While it is understood that usage of any paved surface by trucks will cause some damage over a period of time, there are several safety factors to be taken into account, namely safety of the other residents on Shingle Road, as well as that of the delivery men and garbage men who cannot perform their duties in a safe manner on Scenic Highway due to the volume of traffic.

> After reviewing the previous Order of this Court, as well as the Adjoining Property Owner's Agreement, it is the determination of this Court that this matter is controlled by the doctrine of res judicata, in that the previous Order controls the issues at hand. That

> previous Order held that the Plaintiff had the right to have a normal amount of deliveries, and the proof at this time has not established that the Plaintiff is receiving an abnormal amount of deliveries.

The Trial Court then held that Plaintiff was allowed to use the driveway for delivery trucks and garbage trucks in a normal manner as this did not materially increase the burden on the estate. The proof at the hearing showed UPS either made a delivery or stopped by Plaintiff's business to see if there were any packages to be picked up five days per week. There was no proof introduced as to how many other deliveries were being made (i.e. deliveries by Federal Express, etc.). The garbage trucks used the driveway twice per week.

Chancellor R. Vann Owens entered the original Order in 1993. Chancellor Frank W. Brown, III, entered the September 2000 Order which is the subject of this appeal.

## **Discussion**

Although Plaintiff raises several issues in this appeal, we believe all of these potential issues can be addressed by the resolution of one primary issue. Chancellor Brown interpreted the phrase "normal delivery" contained within Chancellor Owens' 1993 Order to mean normal business delivery. The issue on appeal thus becomes: whether the Trial Court erred when it concluded that the 1993 Order permitted the driveway to be used by delivery trucks and garbage trucks in a normal business manner because this did not materially increase the burden on the subservient estate.

Our standard of review with regard to matters decided by the Trial Court is well settled. A review of findings of fact by a trial court is *de novo* upon the record of the trial court, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Brooks v. Brooks*, 992 S.W.2d 403, 404 (Tenn. 1999). Review of questions of law is *de novo*, without a presumption of correctness. *See Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

The Order entered by the Trial Court in 1993 was not appealed to this Court. That Order, therefore, became final and binding on the parties. *Dupuis v. Dupuis*, 811 S.W.2d 538, 539 (Tenn. Ct. App. 1991) (The plaintiff did not take issue on the first appeal with the trial court's ruling on a particular issue, and "thus its decision in this regard became the law of the case at the conclusion of the first appeal."); *Jones v. Jones*, 784 S.W.2d 349, 351 (Tenn. Ct. App. 1989) ("Because the 1986 order was not appealed from within the time allowed by Tenn. R. App. P. 4(a), the holding of the trial court … is 'the law of the case.'").

At issue in 1993 was the purported increased use of the subservient tenement by the Plaintiff. In its Order, the Trial Court stated: "[T]he original driveway easement granted to the Plaintiff/Counter-defendant by the Adjoining Property Owner's Agreement was to be for the use of the driveway as a residence. Now, the Plaintiff has changed the uses of the premises to a business, and certainly Mr. Laney or his wife going to their business would not be any increase upon the

-4-

burden to Lot No. 2 for that use. Likewise, a normal amount of delivery by the driveway would not be an additional burden upon Lot No. 2." The Order entered in 2000 essentially involved Chancellor Brown's attempt to interpret and clarify what was meant by Chancellor Owens in the 1993 Order.

In 1993, Chancellor Owens correctly noted that the original easement addressed the use of the subject driveway for residential purposes. Chancellor Owens further concluded that a "normal amount" of delivery was permissible. Although Plaintiff was using the property as a business in 1993, we interpret Chancellor Owens' Order to mean that a normal amount of deliveries consistent with a *residential* use was permissible under the easement. This interpretation is supported by Chancellor Owens' statement that "[t]he clients or customers of the Plaintiff/Counter-defendant would be a burden upon the easement and one not contemplated at the time of the Adjoining Property Owner's Agreement." To interpret the 1993 Order in the way the Trial Court did results in an internal inconsistency in the 1993 Order. Under the Trial Court's interpretation in 2000, Chancellor Owens held that Plaintiff's clients or customers could not use the easement as that would be a burden upon the easement not contemplated at the time of the Agreement, but somehow deliveries consistent with a business use would not be an additional burden on the easement and was contemplated at the time of the Agreement. This interpretation would mean that Chancellor Owens found that the parties both did and did not contemplate a business use of the easement when the Agreement was signed.

The parties' intent when the Agreement was entered into was the central focus of Chancellor Owens' determination. Chancellor Owens' 1993 Order specifically held that "[t]he clients or customers of the Plaintiff/Counter-defendant would be a burden upon the easement and one not contemplated at the time of the Adjoining Property Owner's Agreement." We believe this statement clearly shows Chancellor Owens' intention that the burden on the easement was not to be increased beyond the use of the driveway in an amount and manner consistent with Plaintiff's residential use of the property.

Our reading of Chancellor Brown's Order is that he broadened the permissible use of the driveway to allow for normal *business* use of the driveway for deliveries. We believe this was reversible error. The range of what might be normal business use is virtually unlimited. For example, a normal business use might result in ten deliveries a day, or one delivery a month to Plaintiff's business. We do not read the 1993 Order to be so open-ended. We conclude that the 1993 Order permits Plaintiff to use the driveway for deliveries and garbage pick-up, etc., but only to the extent that such would be consistent with a normal residential (as opposed to business) use of the driveway. We interpret the 1993 Order to allow Plaintiff the use of the driveway only in a manner that "would not be an additional burden upon Lot No. 2" beyond that which would be consistent with "the use of the driveway as a residence." Accordingly, we remand this matter to the Trial Court for a determination as to what use by Plaintiff of the driveway is consistent with a residential use by Plaintiff so as not to result in any additional burden upon Lot No. 2.

## Conclusion

The judgment of the Trial Court is reversed. This case is remanded to the Trial Court for further proceedings as required, consistent with this Opinion, and for collection of costs below. Costs of appeal are taxed to the Appellee, James C. R. Laney.

_____
D. MICHAEL SWINEY